## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIA BRYSON,** | : | **CIVIL NO. 3:24-CV-208** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JESSICA KREMAR,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background

This *pro se* civil rights lawsuit comes before us for consideration of the defendant's motion to dismiss. (Doc. 10). With respect to this motion, the plaintiff's complaint and its accompanying exhibits, disclose the following essential facts which guide us in our consideration of this case:

Ms. Bryson's complaint names a Schuylkill County Children and Youth Services case worker, Jessica Kremar, as the sole defendant. (Doc. 1). While the complaint demands a good deal from the reader, it is evident that the gravamen of this lawsuit entails Bryson's objections to actions taken by Kremar at the request of New York officials with respect to a child neglect petition which was filed against Bryson in New York state. On this score, it appears that in August of 2023 Bryson

1

was charged in Sullivan County New York with disorderly conduct and endangering the welfare of a child. These charges were resolved in January 2024 through imposition of a fine on the disorderly conduct charge and dismissal of the child endangerment charge. (Doc. 1-1, at 1).

Concurrently, state child neglect proceedings were lodged against Bryson in the Sullivan County New York Family Court. (Doc, 1-1, at 2-6). These proceedings were resolved in November of 2023 through an order of adjournment in contemplation of dismissal. (Id.) In pertinent part, that New York state court order required Bryson to establish pediatric care for her daughter, maintain stable housing, ordered Preventive Services supervision for a one-year period and directed that Bryson "must cooperate with Preventive Services." (Id., at 3). Notably, Bryson appears to have consented to this resolution which was reported to the court in New York by November 9, 2023. (Id., at 4).

At the time of the entry of this order directing Bryson to maintain stable housing for her child, imposing children and youth supervision for one year, and instructing Bryson to cooperate with child safety officials, Bryson and her daughter moved to Schuylkill County, Pennsylvania. Ms. Kremar and Schuylkill County Children and Youth were contacted by their New York counterparts on October 24, 2023, to conduct a home assessment of Bryson's living arrangements with her

daughter. (Id., at 11). At that time, Mr. Kremar received the following report from

New York authorities:

> Information received noted [Bryson's daughter] was in placement due
> to mother's mental health; parenting; home conditions / unstable housing
> as the family was reportedly residing in a travel trailer with no running
> water or utilities; and concerns with substance abuse. Also being
> addressed was domestic violence, including information Ms. Bryson
> attempted to set her paramour on fire and during the incident [her
> daughter] was present.

(Id., at 11).

By November 11, 2023, Ms. Kremar was informed that Bryson's daughter was

living with the plaintiff in Schuylkill County, and in accordance with the provisions

of the New York court order directing supervision of Bryson, endeavored to further

assess the suitability of this living arrangement. (Id.) As part of this effort, Ms.

Kremar made an unannounced home visit at Bryson's residence on November 14,

2023. (Id.)

Accounts of the visit vary. For her part, Ms. Kremar described Bryson as

minimally cooperative, but found that home conditions, hygiene, and food supplies

were appropriate. (Id.) However, according to Ms. Kremar, Bryson declined to

undergo drug screening and refused to sign a release allowing Children and Youth

access to her daughter's medical records. (Id., at 11-12). Bryson's refusal to fully

cooperate with Schuylkill County authorities, who were attempting to ensure her

compliance with the terms of the New York state court order, led Ms. Kremar to file a dependency petition in the Court of Common Pleas of Schuylkill County. (Id.) On January 15, 2024, the Pennsylvania Court dismissed this petition, finding that jurisdiction over Bryson's case remained with the Sullivan County New York court. (Id., at 10).

For her part, Ms. Bryson perceived these events in a very different light. Apparently misunderstanding the terms of the New York state court order, Bryson alleged in her complaint that her child dependency proceeding had been dismissed. (Doc. 1). Bryson then asserted, without reference to the New York court order, that Ms. Kremar attempted to inspect her home on November 14, 2023, in violation of the Fourth Amendment since she acted without a warrant or court order authorizing the home assessment. Specifically, Bryson contends that Ms. Kremar told her during this unannounced visit that she could not leave until she saw where Bryson's daughter slept. Finally, Bryson insisted that Ms. Kremar wrongfully attempted to institute a dependency proceeding in the Schuylkill County courts. (Id.) Based upon these averments Bryson sought injunctive relief and damages from Ms. Kremar.

It is against this backdrop that the defendant has moved to dismiss this complaint. (Doc. 10). This motion is fully briefed and is ripe for resolution. For the reasons set forth below, the motion will be granted.

## II.     Discussion

### A.     Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a

review of the adequacy of a complaint, the Supreme Court has advised trial courts

that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to

state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>,

129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White</u> <u>Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l</u> <u>Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express</u> <u>Lines, Ltd. v. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien &</u> <u>Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B**.    **<u>Guiding Legal Benchmarks Governing Child and Youth Service</u>** **<u>Case Workers</u>**

When performing their important child safety and protection responsibilities, child and youth case workers like Ms. Kremar are cloaked in two forms of immunity from civil liability.

At the outset, child and youth case workers are absolutely immune from liability for their role instituting and litigating dependency proceedings in court. As

9

the Third Circuit Court of Appeals has held:

> CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings. We reach this conclusion because (1) the functions performed by the CYS defendants in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.

Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 495 (3d Cir. 1997).

While this absolute immunity is confined to the litigative role of CYS workers, it is well-settled that child and youth case workers are also cloaked in qualified immunity from damages for their child safety investigative activities. Bayer v. Monroe Cnty. Child. & Youth Servs., 577 F.3d 186, 192–93 (3d Cir. 2009). Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly

established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson</u> <u>v. Callahan</u>, 555 U.S. 223, 236 (2009) (permitting federal courts to exercise discretion in deciding which of the two <u>Saucier</u> prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." <u>Mullenix</u>, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (quoting <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." <u>Id.</u> (quoting <u>Al-Kidd</u>, 563 U.S. at 742). Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." <u>Id.</u> On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. <u>See Davis v.</u> <u>Scherer</u>, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of

the conduct at issue"); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." D.C. v. Wesby, 583 U.S. 48, 63, 138 S. Ct. 577, 590 (2018) (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

Applying these legal yardsticks, courts have frequently rebuffed efforts to hold children and youth case workers personally liable for decisions which they make when inquiring into child safety concerns, holding that these officials are entitled to qualified immunity. See e.g., Mammaro v. New Jersey Div. of Child Prot. &

12

<u>Permanency</u>, 814 F.3d 164, 169 (3d Cir. 2016);  <u>Bayer v. Monroe Cnty. Child. &</u>
<u>Youth Servs.</u>, 577 F.3d at 192–93; <u>Breakwell v. Allegheny Cnty. Dep't of Hum.</u>
<u>Servs.</u>, 406 F. App'x 593, 597 (3d Cir. 2010); <u>Jarovits v. Monroe Cnty. Child. &</u>
<u>Youth Servs.</u>, 345 F. App'x 784, 786 (3d Cir. 2009).

These guideposts govern our  consideration of the instant case.

**C.    <u>The Motion to Dismiss Will Be Granted</u>**.

While there is an element of ambiguity to Bryson's constitutional claims, liberally construed we believe that the plaintiff is alleging both that Ms. Kremar wrongfully instituted a dependency proceeding against her and violated her Fourth Amendment rights when she engaged in an unannounced home inspection of Bryson's residence on November 14, 2023.

In our view, both of these claims fail in light of the uncontested information set forth in Bryson's complaint and the accompanying exhibits appended to that complaint. Turning first to any claim arising out of Ms. Kremar's actions instituting and litigating a dependency proceeding in the Schuylkill County Court of Common Pleas, given the settled proposition that "CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings," <u>Ernst</u>, 108 F.3d at 495, Ms. Kremar's conduct

is cloaked in absolute immunity. Therefore, this claim fails as a matter of law and should be dismissed.[1]

As for any Fourth Amendment claims lodged by Bryson relating to Ms. Kremar's unannounced November 14, 2023 home visit, while we acknowledge that CYS case workers are not entitled to a blanket exemption from the requirements of the Fourth Amendment, given the fact specific approach that we are enjoined to apply to questions of qualified immunity, we find that the defendant is entitled to qualified immunity for her role in this inspection that was designed to ensure the safety of Bryson's child.

At the outset, we note that, despite her protestations that there were no court orders in place at the time of these events, Bryson's complaint reveals that she was subject to a court order from the Sullivan County New York court. That consented to order required Bryson to establish pediatric care for her daughter, maintain stable housing, ordered Preventive Services supervision for a one year period, and directed that Bryson "must cooperate with Preventive Services." When Ms. Kremar was notified by her Sullivan County New York counterparts that Bryson—who had

---

[1] In the alternative, we note that, in light of the court's holding in <u>Ernst</u>, Ms. Kremar could not have reasonably understood her actions to transgress Bryson's clearly established constitutional rights. Therefore, Ms. Kremar would also be entitled to qualified immunity with respect to his claim.

allegedly attempted to set her paramour on fire in the presence of her daughter—had

moved with the child to Schuylkill County, she could reasonably conclude that the

concurred-in New York state order, which required Bryson to maintain stable housing

and obliged Bryson to cooperate with children and youth services, authorized her to

conduct a home inspection in order to ensure this child's continued safety. Indeed,

given Ms. Kremar's legal responsibility to "[p]revent abuse, neglect and

exploitation," 23 Pa. Cons. Stat. § 6373 (a)(2), she would likely have been derelict in

her duties if she had not followed up on this information and conducted an inspection

to determine whether this child was living in a secure and safe environment.

Moreover, there is no robust consensus of case law which would have admonished

Ms. Kremar to avoid inquiring into the safety of this child. Therefore, in this factual

context, it simply cannot be said that the home inspection conducted by Ms. Kremar

violated Bryson's clearly established constitutional rights. Accordingly, any claim

for damages arising out of this home inspection is barred by the doctrine of qualified

immunity and will be dismissed.[2]

---

[2] Finally, we note that with respect to Bryson's requests for injunctive relief, at the time she filed this complaint in February of 2024, she was still subject to the orders of the Sullivan County New York court. Therefore, her request for injunctive relief essentially invited us to intervene in an ongoing state child protection case, something we should refrain from doing, especially since her legal claims for damages otherwise fail on immunity grounds. See Hook v. Pike Cnty., No. 3:23-CV-1204, 2024 WL

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: May 13, 2025

---

3249662, at *6 (M.D. Pa. Apr. 26, 2024), report and recommendation adopted as modified, No. 3:23-CV-1204, 2024 WL 3237142 (M.D. Pa. June 28, 2024).